**ORIGINAL**

FILED IN CLERK'S OFFICE
U S D C   Atlanta

OCT 1 6 2006

JAMES N. HATTEN, Clerk
By: _Ju Pin Knee_ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

IN RE OSB ANTITRUST LITIGATION

Misc No.   **1   06 - M I - 0 3 0 8**

THIS DOCUMENT RELATES TO:
All Indirect Purchaser Actions.

~~GET~~

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SUBPOENA DIRECTED TO HOME DEPOT INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45(c)(2)(B)

### INTRODUCTION

The Indirect Purchaser Plaintiffs in *In re OSB Antitrust Litigation*, No. 06-CV-00826 (PSD) pending in the U.S. District Court for the Eastern District of Pennsylvania by and through their counsel move for an Order compelling Home Depot Inc. ("Home Depot") to produce documents responsive to the subpoena properly served upon it on July 6, 2006. Despite Indirect Purchaser's good faith efforts to secure the discovery without Court intervention, Home Depot has failed to produce documents responsive to the subpoena and is now relying upon untimely objections served months after the deadline provided for in Fed. R. Civ. P. 45(c)(2)(B). The Indirect Purchaser Plaintiffs include retail customers who purchased OSB from retail stores such as Home Depot. Home Depot, the largest OSB retailer in the country with stores throughout the United States, is in exclusive

possession of transactional information showing whether the alleged supra-competitive prices were passed through the chain of distribution to its retail customers, information that is integral to class certification. The Indirect Purchaser Plaintiffs requested Home Depot's documents in order to meet their burden on class certification, on which initial briefs are due December 1, 2006.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2006, the first of twelve lawsuits was filed in the United States District Court for the Eastern District of Pennsylvania alleging that Louisiana-Pacific Corporation, Georgia-Pacific Corporation, J.M. Huber Corporation, Weyerhaeuser Company, Potlatch Corporation, Ainsworth Lumber Co. Ltd., Tolko Industries, Inc. and Norbord, Inc. (referred to collectively as "Defendants") conspired to artificially fix, raise, maintain or stabilize prices for oriented strand board ("OSB") in violation of federal antitrust laws. Of those twelve lawsuits, five seek remedies on behalf of a class of indirect purchasers who allege that they were injured by the Defendants' anticompetitive conduct. The Indirect Purchaser Plaintiffs also seek remedies for alleged violations of various states' laws.[1]

---

[1] Plaintiffs assert state law claims for damages and other relief on behalf of classes of indirect OSB purchasers in Arizona, California, the District of Columbia,

2

On May 25, 2006, the Honorable Paul S. Diamond entered a scheduling order consolidating the cases and imposing a strict timeline for conducting the litigation. (Declaration of Daniel D'Angelo ("D'Angelo Decl."), Ex. 1). Judge Diamond explicitly instructed the parties that he will not entertain requests for additional time and ordered that the parties submit weekly reports outlining the progress of discovery efforts.

In compliance with Judge Diamond's scheduling order, the Indirect Purchaser Plaintiffs filed their Consolidated Amended Class Action Complaint ("Complaint") on June 15, 2006 (D'Angelo Decl., Ex. 2). Defendants filed motions to dismiss and certain Defendants sought summary judgment. On September 25, 2006, Judge Diamond denied the motions to dismiss and certain motions for summary judgment. Judge Diamond's scheduling order requires the Indirect Purchaser Plaintiffs to file their motion for class certification on December 1, 2006. Thus, any discovery in aid of class certification must be completed in advance of that deadline.

---

Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin (the "Indirect Purchaser States").

Accordingly, lead counsel for the Indirect Purchaser Plaintiffs propounded narrowly tailored discovery on carefully selected entities, including issuing subpoenas to non-parties requesting that they produce relevant documents. On June 30, 2006, the Indirect Purchaser Plaintiffs issued their subpoena to Home Depot seeking production of documents in the Northern District of Georgia pursuant to Fed. R. Civ. P. 45. (D'Angelo Decl., Ex. 3). The Indirect Purchaser Plaintiffs caused the subpoena to be served on Home Depot on July 6, 2006. The subpoena includes twenty itemized requests for production and requires Home Depot to make available for inspection or produce responsive documents on August 7, 2006 at an Atlanta, Georgia office.[2] The Indirect Purchaser Plaintiffs' requests for production to Home Depot seek documents relating to the prices Home Depot paid and charged for OSB as well as information regarding Home Depot's OSB sales volume in different states. This chain of distribution information is directly relevant to the lawsuits pending in the Eastern District of Pennsylvania and the information is not readily available from another source. This information bears directly on central issue of whether or not the alleged

---

[2] At no time did Home Depot assert any defect(s) in the subpoena or service of process.

4

overcharge for OSB was passed through to end-users by the intermediate sellers in the chain.

Daniel D'Angelo, counsel for the Indirect Purchaser Plaintiffs, had three telephone discussions and a number of email exchanges with Monica Patterson, corporate counsel for Home Depot, concerning the scope of the subpoena, the documents requested through the subpoena, and the documents Home Depot had in its possession responsive to the subpoena. (D'Angelo Decl., ¶¶ 8-14). During each of the three conversations, Mr. D'Angelo conveyed that the Indirect Purchaser Plaintiffs were particularly interested in Home Depot's electronic transactional data – Home Depot's purchase and sale transactions for OSB. (D'Angelo Decl., ¶¶ 8-10). Cognizant that Home Depot was the largest direct purchaser class member, counsel for the Indirect Purchaser Plaintiffs did everything they could to foster a cooperative working relationship with Home Depot. Counsel for Indirect Purchaser Plaintiffs explained the underlying litigation, explained the purpose of the subpoena, and made themselves available to Home Depot to answer any questions or concerns.[3]

---

[3]  Counsel for Indirect Purchaser Plaintiffs also provided Home Depot with a copy of the Stipulated Protective Order signed by Hon. Paul S. Diamond and entered on May 25, 2006 and advised Home Depot that Indirect Purchaser Plaintiffs would

On September 5, 2006, during a conference call, counsel for Home Depot represented that Home Depot would produce documents responsive to the subpoena on or before September 22, 2006. Although counsel for Home Depot was unable to answer Mr. D'Angelo's question as to how far back the purchase and sale side transactional data went, the Indirect Purchaser Plaintiffs were assured that Home Depot would produce documents on or before September 22, 2006. (D'Angelo Decl., ¶ 10).

On September 18, 2006, counsel for Home Depot emailed Mr. D'Angelo and answered his question as to the dates of the transactional data. In the email, Ms. Patterson stated, "I know you are seeking information back to 2000, but we do not maintain records of sales/purchases prior to 2002." (D'Angelo Decl., ¶ 12, Ex. 6).

By letter dated September 29, 2006, one week after the negotiated deadline for production, and ten (10) weeks after the deadline for filing objections, Home Depot served objections to the subpoena and produced ninety-six pages, consisting

---

not oppose Home Depot's confidentiality designations. (D'Angelo Decl., ¶¶ 10-11, Ex. 5).

primarily of OSB vendor buying agreements with certain defendants.[4] (D'Angelo Decl., ¶ 15). Home Depot failed to produce a single piece of paper showing the prices paid by Home Depot for OSB. Home Depot also failed to produce documents showing any sales side transactions for OSB. Home Depot failed to produce documents showing the quantity of OSB sold, the dates the OSB was sold, the prices OSB was sold for, or the customers who purchased the OSB.[5] Further, Home Depot failed to produce any documents showing the list prices of OSB during the relevant period. All of these documents were requested through the subpoena and were discussed in great detail over a two month period. (D'Angelo Decl., ¶ 15).

On October 6, 2006, in response to Indirect Purchaser Plaintiffs' letter dated October 4, 2006, Home Depot's counsel represented that Home Depot has produced documents in its posession, custody or control and that it reserves its right to supplement production at a later date.

---

[4] Home Depot also produced a plywood proposal, an OSB bid, and an incomplete spreadsheet showing certain OSB purchase information without prices.

[5] Inexplicably, the cover letter repeated Home Depot's prior representation made on September 18, 2006, that it does not have purchase or sales side information **prior** to 2002. (Emphasis added). (D'Angelo Decl., ¶ 16, Ex. 10).

Faced with Judge Diamond's instruction that he will not entertain requests for additional time to conduct discovery and the necessity of obtaining documents from Home Depot, Indirect Purchaser Plaintiffs are forced to file this motion seeking an order from this Court instructing Home Depot to produce all relevant documents immediately.

## ARGUMENT

### A.    Federal Rule of Civil Procedure 45 Compels Production.

Fed. R. Civ. P. 45 permits parties in legal proceedings to compel a non-party to: (1) appear and testify at a designated time and location; (2) produce documents; and/or (3) permit an inspection of premises. Fed. R. Civ. P. 45 (2006). Fed. R. Civ. P. 45 provides in pertinent part that "[i]f objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production." Fed. R. Civ. P. 45(c)(2)(B). The permissible scope of a subpoena *duces tecum* is very broad.  *Kona Spring Water Distributing, Ltd. v. World Triathlon Corp.*, 2006 WL 905517 at *2 (M.D.Fla. 2006) ("scope of discovery through a subpoena is 'exceedingly broad' and incorporates the provisions of Rule 26(b) and Rule 34"). *quoting* 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (2d ed. 1995).    Moreover, "the law's basic presumption is that the public is entitled to

every person's evidence." *Farnsworth v. Procter & Gamble Co.*, 758 F. 2d 1545,

1546 (11th Cir. 1985). A party resisting compliance with a subpoena bears a heavy

burden to show "compliance with the subpoena would be 'unreasonable and

oppressive.'" *Composition Roofers Union Local 30 v. Graveley Roofing Enter.,*

*Inc.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995) (*citing Heat & Control, Inc. v. Hester*

*Indus., Inc.,* 785 F.2d 1017, 1023 (Fed. Cir. 1986)). Rule 45 is clear that the

propounding party should be mindful of the potential for undue burden or expense

on the responding party. *See* Fed. R. Civ. P. 45(c)(1).

Here, there is no dispute that the Indirect Purchaser Plaintiffs' subpoena

seeking production directed by Home Depot was properly served pursuant to Rule

45.[6] Furthermore, the documents the Indirect Purchaser Plaintiffs seek are directly

related to the underlying litigation against manufacturers who allegedly conspired

to fix the prices of OSB. Home Depot admittedly purchased OSB from those

manufacturers and, in turn, sold OSB throughout the United States, including the

Indirect Purchaser States. Rule 45 permits the Indirect Purchaser Plaintiffs to

subpoena Home Depot and to demand production of documents relevant to the

litigation pending in the Eastern District of Pennsylvania. Here, the requests are

---

[6] *See* n. 2, *supra.*

directly relevant to the chain of distribution and pricing for OSB and in particular, to the issue of whether the alleged supra-competitive pricing was passed through the chain of distribution. Accordingly, the documents are within the scope of discoverable information permitted by Rule 45.

**B.    The Law Favors Enforcing a Subpoena.**

Whether to compel a non-party to respond to a Rule 45 subpoena requires the court to balance the need for discovery by the requesting party, society's interest in full and complete litigation and the burden on the responding party. In *Schaff v. SmithKline Beecham Corp.*, 2006 WL 2246146 at *2 (M.D. Fla. 2006), the court emphasized that it was the trial court's duty to "weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by the request and the particularity with which the documents are described against the burden imposed on the person ordeal to produce the desired information." Here, the Indirect Purchaser Plaintiffs seek documents that establish the chain of distribution from the Defendants to direct purchasers (e.g., Home Depot) and then to the class of indirect purchasers. This information is not readily available from any other source. Furthermore, the information is relevant to class certification and ultimately to whether the indirect purchasers suffered injury and, if so, to valuing that injury. Lead counsel for the

Indirect Purchaser Plaintiffs repeatedly attempted to cooperate with Home Depot's counsel in an effort to avoid any burden on Home Depot. In return, Home Depot strung counsel along with assurances of cooperation and then made a manifestly inadequate production.

In *Insulate America v. Masco Corp.*, 227 F.R.D. 427 (W.D.N.C. 2005), the Court reiterated that the determination of whether to enforce a subpoena issued to a non-party requires the court to balance the relevance, need, confidentiality and potential harm of enforcement. *Id.* at 432. In *Insulate*, the parties were engaged in antitrust litigation in the Northern District of Georgia. The complaint alleged violations of federal antitrust laws as well as various state law causes of action. Defendant Masco served Insulate America, a cooperative whose members were involved in the business of installing residential and commercial insulation, with a subpoena demanding production of documents. Insulate America sought to quash a subpoena issued in this district. The Court granted in part and denied in part the motion to quash finding that certain of the thirty-four document requests were relevant, necessary, would not be harmful and did not compromise confidential information. *Id.* at 432-435. Specifically, the court found that a request for documents "reflecting or referring or relating to any communications between you and Masco [defendant in the underlying litigation] concerning residential

11

insulation contracting services during the relevant period," was relevant, necessary

and would not violate confidences. *Id.* 434. The court also ordered Insulate to

produce documents showing rebates, discounts or credits given to the plaintiff

during the relevant period. *Id.* Thus, the court enforced the requests for

information regarding the chain of distribution and prices for the product along that

chain of distribution. Similarly, here, the Indirect Purchaser Plaintiffs seek

documents related to the chain of distribution and the prices paid for OSB along

that chain of distribution. Compelling Home Depot to produce documents

responsive to the subpoena will not unduly burden Home Depot. The documents

are the very sort of documents that Home Depot will need to gather in order to file

a claim in the event that the class litigation settles or if Home Depot decides to file

its own litigation as a direct purchaser from the defendants.[7]

C.    **Indirect Purchaser Plaintiffs Are Entitled To Discovery From Home Depot Of Relevant Information Necessary To Meet Their Burden On Class Certification.**

In order to succeed on a motion for class certification, Indirect Purchaser

Plaintiffs bear the burden of establishing each of the requirements of Rule 23(a)

---

[7] Home Depot maintains a modern electronic database that provides information concerning customers, sales, inventory, and operations. (D'Angelo Decl., ¶¶ 20-21, Exs. 12 & 13).

and (b)(3) of the Federal Rules of Civil Procedure. *In re Plastic Cutlery Antitrust Litigation*, 1998 U.S. Dist. LEXIS 3628 *5 (E.D.PA. March 20, 1998). These requirements include numerosity, commonality, typicality, adequacy of representation, superiority, and predominance of common issues. In particular, with respect to the predominance prong in a price-fixing antitrust class action:

> Plaintiffs must establish that both the defendants' violations of law and the impact of those violations on the class members involve predominantly common issues. Plaintiffs must therefore make a threshold showing that the element of impact will predominantly involve generalized issues of proof, rather than questions which are particular to each member of the plaintiff class.

*Plastic Cutlery Antitrust Litigation,* 1998 U.S. Dist. LEXIS 3628 at *12-13 (citations omitted).

Although Indirect Purchaser Plaintiffs are not required to prove their case on the merits or even to select a particular econometric model for proving impact at this stage of the litigation, *see, e.g., In re Linerboard Antitrust Litigation*, 305 F.R.D. 145, 155 (3rd Cir. 2002), they nevertheless must make a threshold showing that they will be able to do so at trial on a common basis. Such a showing often is made through expert testimony, and Indirect Purchaser Plaintiffs must have the kind of information an expert can use to determine whether he can opine that impact and damages are provable on a common basis.

13

In affirming class certification in *Linerboard*, the Third Circuit commented favorably on the testimony of the plaintiffs' experts, which demonstrated that antitrust impact could be proven by generalized proof:

> Dr. Beyer made an extensive empirical investigation into the behavior of linerboard and corrugated box prices over time, which proved a basis for his opinion of common impact. He stated that he had studied the structure of the industry, including the Appellants' market power, geographical overlap, the fungible nature of the products, the inelastic demand and lack of a substitute.

*Linerboard*, 305 F.3d at 153.  Class Plaintiffs have structured their discovery requests to Defendants and third-parties so they are reasonably calculated to obtain information relevant to making such a showing.

Indirect Purchaser Plaintiffs seek information from Home Depot regarding the prices paid by Home Depot for OSB, Home Depot's sales of OSB, the quantity of OSB sold, the dates the OSB was sold, the prices OSB was sold for, and the customers who purchased the OSB, as well as the list prices of OSB during the relevant period.  (D'Angelo Decl., Ex. 3).  This discovery is reasonably calculated to obtain evidence to meet Indirect Purchaser Plaintiffs' burden under Rule 23(a) and (b)(3).

**D.     Home Depot's Objections Are Without Merit**

    **1.     Home Depot Waived It's Objections**

Home Depot waived its right to object to the subpoena by failing to make a written objection within fourteen days of service of the subpoena. *See* Fed. R. Civ. P. 45(c)(2)(B). *See also, Universal City Development Partners, Ltd. V. Ride & Show Engineers, Inc.*, 220 F.R.D. 688, 697 (M.D.Fla. 2005) (Court recognized that Rule 45 requires both an objection be made to the subpoena and the claim of privilege must be stated within 14 days of service of the subpoena); *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996) (party objecting to subpoena on the basis of privilege must both object to the subpoena and state a claim for privilege within 14 days of service of the subpoena); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D.N.M. 1998) (nonparty waived right to object to a subpoena requiring production of tapes and transcripts by failing to object within 14 days after service of subpoena); *Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir. 1990)(nonparty's motion for protective order properly denied for failure to file objection within the time permitted by the Federal Rules). The subpoena was properly served on July 6, 2006 and no extensions for objections were given by Indirect Purchaser Plaintiffs.

**2.    The Subpoena Seeks Only Documents That Are Relevant To Class Certification Or Which Are Reasonably Calculated To Lead To The Discovery Of Admissible Evidence On Class Certification**

Home Depot objects that the subpoena is vague, overbroad and unduly burdensome; and it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  These objections lack merit.

Indirect Purchaser Plaintiffs crafted the subpoena to seek documents and information essential to their forthcoming motion for class certification.  In an attempt to avoid the need to involve this Court in the discovery process, Indirect Purchaser Plaintiffs endeavored to cooperate with Home Depot.  Over the course of the two months of discussions, counsel for Home Depot never once raised an objection to the subpoena requests.  As demonstrated above, the information sought is discoverable in relation to the requirements of Rule 23, and provides information useful for Indirect Purchaser Plaintiffs' experts to assess the impact of the OSB price-fixing conspiracy.

If Home Depot had legitimate concerns, it should have addressed those with Indirect Purchaser Plaintiffs, allowing the parties an opportunity to resolve these objections without the need for Court intervention.

16

### 3.     Home Depot Has Failed To Meet Its Burden Of Showing That Documents Are Immune From Discovery

Home Depot further objects to providing any documents responsive to the subpoena to the extent it "seeks to obtain documents and information protected by the attorney-client privilege or the work-product doctrine." This objection is improper. Fed. R. Civ. P. 45(d)(2) provides, in pertinent part: "When information subject to subpoena is withheld on a claim that is privileged. . . , the claim shall be made expressly and shall be supported by a description of nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Home Depot failed to identify any document that it claims is privileged, and failed to provide any description whatsoever of any such document, in violation of Rule 45(d)(2). Finally, because Home Depot has not produced a privilege log in compliance with Rule 45, the merits of any assertion of privilege cannot be properly evaluated.

### 4.     Home Depot Has Failed To Meet Its Burden Of Showing That The Confidentiality Order Is Insufficient To Protect Any Documents That Contain Confidential And/Or Proprietary Information

Home Depot lodged an objection that the subpoena seeks "documents or information containing Home Depot's trade secrets, confidential research, proprietary information or commercially sensitive information or would require

that Home Depot disclose confidential, competitively sensitive information." This objection also lacks merit.

Rule 45(a)(3)(C) allows discovery of confidential and proprietary information "upon specified conditions." Here, there is a negotiated Confidentiality Order, which was entered as an Order of the Court May 25, 2006. (D'Angelo Decl., Ex. 5). This Order specifically applies to discovery materials produced by third-parties, and will provide ample protection to Home Depot of any documents which legitimately contain confidential and/or proprietary information. In fact, the Confidentiality Order contemplates two separate layers of confidentiality. Given that the documents are discoverable, the protections afforded by the Confidentiality Order already entered by the Court, and the general preference for public access to judicial proceedings and judicial records, *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3rd Cir. 1988), Home Depot bears a heavy burden to show with specificity the injury it will suffer by production of the requested documents. *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3rd Cir. 1984). Home Depot has failed even to attempt such a showing. Thus, production should be ordered, subject to the terms of the Confidentiality Order.

**E.    This Court Has The Discretion To Transfer This Subpoena
Enforcement Matter To The Eastern District of Pennsylvania**

Some courts have recognized that in the interest of uniformity and judicial

conduct, it is appropriate to transfer subpoena enforcement matters to the forum

where the underlying litigation is pending. *In the Matter of Subpoena Duces*

*Tecum*, 918 F.Supp. 272, 273 (E.D. Wis. 1996) citing, *In re Digital Equipment*

*Corporation*, 949 F.2d 228, (8th Cir. 1991) (the district court may in its discretion

remit a discovery matter involving deposition subpoenas to the underlying trial

court); *Pactel Personal Communications v. JMB Realty Corp.*, 133 F.R.D. 137

(E.D. Mo. 1990)(district court may transfer a motion to quash a subpoena duces

tecum filed on nonparties to where underlying litigation is pending); *Petersen v.*

*Douglas County Bank & Trust Co.*, 940 F.2d 1389 (10th Cir. 1991) (Court held *sua*

*sponte* that transferring the motion to quash to the forum where underlying

litigation was pending was not improper). *See also*, 9A Charles A. Wright &

Arthur R. Miller, Federal Practice and Procedure § 2463 at 79 (1995). ("It is within

the discretion of the court that issued the subpoena to transfer motions involving

the subpoena to the district in which the action is pending.").

The Indirect Purchaser Plaintiffs have invested a significant amount of time

and expenses litigating the complex price-fixing action pending in the Eastern

District of Pennsylvania. The Indirect Purchaser Plaintiffs have defeated multiple motions to dismiss and summary judgment and are advancing their action to class certification. The Indirect Purchaser Plaintiffs have reviewed hundreds of thousands of pages produced by defendants and have apprised Judge Diamond of all events in the action, including third party discovery. Judge Diamond is well aware of how important discovery from Home Depot is to the Indirect Purchaser Plaintiffs' class certification papers. In addition, it is not much of a burden to Home Depot, which has stores (and counsel) in Pennsylvania, to litigate this matter in the Eastern District of Pennsylvania. Thus, if the Court believes that the Eastern District of Pennsylvania is the more appropriate forum to hear this matter, the Indirect Purchaser Plaintiffs assent to the transfer.

## CONCLUSION

For the reasons set forth herein, the Indirect Purchaser Plaintiffs' Motion to

Enforce Subpoena Directed to Home Depot Inc. should be granted.


DATED:   October 16, 2006

                                     Larry H. Chesin
                                     PARKS, CHESIN & WALBERT, P.C.
                                     75 Fourteenth Street, 26th Floor
                                     Atlanta, GA 30309
                                     Email:  lchesin@pcwlawfirm.com
                                     Tel: (404) 873-8000
                                     Fax: (404) 873-8050

Of Counsel:

Kenneth G. Gilman
David Pastor
Daniel D'Angelo
GILMAN AND PASTOR, LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
Tel: (617) 742-9700

Robert C. Schubert
Willem F. Jonckheer
Peter E. Borkon
SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Tel: (415) 788-4220

*Counsel for Indirect Purchaser Plaintiffs*

21

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

IN RE OSB ANTITRUST LITIGATION

———————————————

THIS DOCUMENT RELATES TO:
All Indirect Purchaser Actions.

Misc No.

## Local Rule 7.1D Certification

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

## CERTIFICATE OF SERVICE

I hereby certify I served the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SUBPOENA DIRECTED TO HOME DEPOT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45(c)(2)(B)** via hand delivery, as follows:

Monica F. Patterson, Esq.
Corporate Counsel, Litigation Department
Home Depot USA, Inc.
2455 Paces Ferry Road, N.W.
Building C-8
Atlanta, GA 30339

This 16th day of October, 2006.

Larry H. Chesin
Georgia Bar No. 123600
PARKS, CHESIN & WALBERT. P.C.